UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BERNHARD LAUFER and
ALEXANDER E. EISEMANN, as Next Friend
of Bernhard Laufer,

                Petitioner,

     v.

ANTHONY J. ANNUCCI, Acting
Commissioner, New York State Department of
Corrections and Community Supervision,
JOSEPH H. NOETH, Warden, Attica
Correctional Facility, and
LETITIA JAMES, Attorney General of the
State of New York,

                Respondents.

**MEMORANDUM & ORDER**
22-cv-3304 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Petitioner Bernhard Laufer was convicted after a jury trial and sentenced to concurrent prison terms of twenty years. Petitioner filed this petition for a writ of habeas corpus ("Petition") claiming violations of his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution. ECF No. 1 (Petition); ECF No. 12 (Amended Petition). He asks this Court to grant a writ of habeas corpus, declare the judgment of conviction invalid, and bar Respondents from using such judgment of conviction to continue to incarcerate Petitioner or for any other purpose. *Id.* at 11–12. For the reasons set forth below, the Petition is denied.

## BACKGROUND

A.    *Factual Background*

In November 2012, Petitioner committed multiple acts of vandalism and violence targeted at the Masjid Al-Saaliheen Mosque ("Mosque") in Queens, New York. On November

16, 2012, in the early morning, Petitioner went to the Mosque and struck the door with a large

stone, causing damage to the door.  ECF Nos. 8-1, 8-2 at 410–26 (State Court Record).[1]  Shortly

after damaging the door, Petitioner started leaving threatening messages on the Mosque's

answering machine.  *Id*. at 430–34.  Petitioner left seven messages threatening the worshippers

of the Mosque, and Muslims generally.  *Id*. at 444.

On November 18, 2012, Petitioner returned to the Mosque sometime between 4:30AM

and 5:00AM armed with a switchblade knife.  *Id*. at 654; ECF No. 8-3 at 787.  Petitioner

observed Bashir Ahmad, a member and caretaker of the Mosque, enter the outer entrance of the

building.  *Id*. at 642.  Petitioner followed Mr. Ahmad up the stairs to the inner door of the

Mosque.  *Id*. at 647–48.  Petitioner attacked Mr. Ahmad as he was trying to unlock the door.  *Id*.

at 649.  Petitioner pushed him and used the switchblade to stab him multiple times in the head,

back, leg, and hand.  *Id*. at 650–57.  Petitioner continued to stab Mr. Ahmad as Mr. Ahmad tried

to stand, stabbing him repeatedly in the legs and hands.  *Id*. at 651–52.  The struggle between the

two men continued until Mr. Ahmad headbutted Petitioner and was able to bite Petitioner's hand.

*Id*. at 657–58.  Mr. Ahmad used that opportunity to run out of the Mosque and call for help.  *Id*.

at 658–59.  Mr. Ahmad suffered permanent scars on his face and head and can no longer use his

right hand to hold or carry heavy objects.  *Id*. at 662.

During pre-trial proceedings, Petitioner was evaluated by two separate doctors pursuant

to New York Criminal Procedure Law ("NYCPL") § 730, who found him unfit to stand trial.

ECF No. 8-3 at 756.  As a result, Petitioner was remanded for treatment at a state psychiatric

---

[1]     While the State Court Record was submitted through multiple exhibits under ECF No. 8, spanning from 8 through 8-6, all exhibits follow the same internal pagination. The citations to the record will indicate the exhibit number but follow the internal pagination of the documents considered as a whole.

facility to be treated until he could be found fit.  *Id*.[2]  After approximately three months of treatment, Petitioner was reexamined and found fit.  *Id*. at 763.  Thereafter, the case proceeded to trial.  *Id*.  Petitioner's counsel gave notice, pursuant to NYCPL § 250.10, of his intention to raise an insanity defense.  *Id*. at 873.  Petitioner was subsequently evaluated by his own expert psychiatrist, Dr. Alexander Bardey, *id.* at 735, and an expert hired by the prosecution, Dr. Stuart Kirschner, *id.* at 792.

At trial, Petitioner called Dr. Bardey, who testified that he diagnosed Petitioner for trial and then subsequently served as Petitioner's treating psychiatrist.  *Id*. at 744.  Dr. Bardey testified about Petitioner's mental state, opining that Petitioner suffered from bipolar disorder and may suffer from schizoaffective disorder.  Dr. Bardey concluded that Petitioner was psychotic, delusional, and out of touch with reality and was in a deranged, manic, psychotic episode when these incidents occurred.  *Id*. at 781–83.  According to Dr. Bardey, Petitioner felt he was in mortal danger and wanted to defend himself when he attacked Mr. Ahmad.  *Id*. at 788.

Petitioner's counsel also sought to call Dr. Leonid Izrayelit, Petitioner's former treating psychiatrist, to testify.  ECF No. 8-4 at 909–10.  The prosecution objected because the defense allegedly provided incomplete treatment notes from Dr. Izrayelit.  *Id.*  The prosecution had received treatment notes from 2008 to February 2012, and then from December 2012 to April 2013.  *Id*. at 912–14.  The defense had not, however, provided the prosecution with treatment notes from between February 2012 to December 2012, the period right before and during Petitioner's attack at the Mosque.  *Id*. at 909–14.  The prosecution sought to preclude Dr.

---

[2]     In June 2014, while Petitioner's state case was pending, he was arrested and charged in this District with sending threatening emails to the Council on American Islamic relations in Washington, D.C.  He pled guilty to one of the charges on March 5, 2015, and was sentenced on July 7, 2015, to time served.  *United States v. Laufer,* No. 15-cr-77, ECF Nos. 45, 61 (E.D.N.Y.).

Izrayelit's testimony, while the defense requested that the court instruct the jury that it could

draw an adverse inference for the missing treatment notes rather than precluding the testimony.

*Id*. at 909, 914.

The trial court heard from Dr. Izrayelit outside the presence of the jury. *Id*. at 956. Dr.

Izrayelit testified that, to the best of his recollection, he was not treating Petitioner during the

period for which there were missing treatment notes. *Id*. at 959–61. While Petitioner contended

that he was being treated by Dr. Izrayelit during this period, Dr. Izrayelit testified that he thought

Petitioner was seen by a different doctor during the relevant time period. *Id*. at 964. After the

trial court heard from Dr. Izrayelit, the prosecution renewed its application that his testimony be

precluded. *Id*. at 972. Petitioner's counsel argued that the jury could decide for itself whether

Petitioner was treated by Dr. Izrayelit or not and requested a less severe sanction than preclusion.

*Id*. at 977–80. The trial court permitted the defense to provide an offer of proof. *Id* at 981.

Defense counsel argued that Dr. Izrayelit could testify as to his treatment of Petitioner up until

February 2012. *Id*. at 981–82. The trial court pointed out that Dr. Bardey had already testified

about his review of Dr. Izrayelit's notes from the same time period, and therefore that material

had already been presented to the jury. *Id* at 978, 983. After noting that much of the material

Dr. Izrayelit would testify to was already before the jury, the trial court precluded his testimony.

*Id*. at 983.

On November 18, 2016, following a seven-day trial, the jury returned a guilty verdict on

all five counts of the indictment.[3]   ECF No. 8-6 at 1312–16. On December 14, 2016, Petitioner

---

[3]      Petitioner was convicted of the following charges:  Attempted Murder in the Second
Degree as a Hate Crime (Penal Law §§ 110/125.25(1)); Attempted Assault in the First Degree as
a Hate Crime (Penal Law §§ 110/120.10(1)); Assault in the Second Degree as a Hate Crime
(Penal Law § 120.05(2); Criminal Possession of a Weapon in the Fourth Degree (Penal Law §

was sentenced to 20 years' imprisonment, followed by five years of post-release supervision.[4]

ECF No. 8-12 at 37.

   B.   *Procedural Background*

   Petitioner appealed his conviction to the Appellate Division, Second Department

("Appellate Division") on July 31, 2019, raising four main issues, each with multiple sub-claims.

ECF No. 9-1 (Petitioner's Appellate Brief).   Petitioner challenged:   (1) the denial of his motion

to dismiss due to a violation of New York's speedy trial law, NYCPL § 30.30; (2) the sufficiency

of the evidence supporting the conviction for attempted murder; (3) whether the verdict was

against the weight of the evidence; and (4) a number of the court's rulings at trial.   *Id.*   Petitioner

further argued that the trial court impermissibly deprived Petitioner of his right to present a

complete defense when it precluded the testimony of Dr. Izrayelit.[5]   *Id.* at 105.

---

265.01(2)); and Criminal Mischief in the Fourth Degree as a Hate Crime (Penal Law §
145.00(1)).   ECF No. 8-6 at 1312–16.

[4]   Petitioner was sentenced as follows:   20 years' imprisonment on each of the convictions
for Attempted Murder and Attempted Assault in the First Degree; 15 years' imprisonment on the
conviction for Assault in the Second Degree; one year's imprisonment for the conviction of
Criminal Possession of a Weapon in the Fourth Degree; and an indeterminate sentence of one
and one-third to four years' imprisonment, with five years' post-release supervision, for the
Criminal Mischief in the Fourth-Degree conviction.   ECF No. 8-12 at 37–38.   All the sentences
were to run concurrently.   *Id.*

[5]   In addition, Petitioner argued to the Appellate Division that during jury selection the trial
court had:   (i) improperly struck the only prospective juror that was Jewish, and (ii) erred when it
refused to allow counsel to question prospective jurors about their familiarity with the Holocaust.
ECF No. 9-1 at 101–05.   Petitioner also argued that the trial court impermissibly deprived him of
his right to present a complete defense when it:   (i) precluded Petitioner's counsel from
questioning Mr. Ahmad about how he entered the United States; (ii) precluded Petitioner's
counsel from questioning Mr. Ahmad about possible bias against non-Muslims; (iii) precluded
Petitioner's counsel from questioning the details of Mr. Ahmad's version of the events that
occurred at the Mosque on November 18, 2012; (iv) precluded counsel from questioning Mr.
Ahmad about prior inconsistent statements; (v) refused to allow counsel a break to prepare to
cross examine the prosecution's expert witness; (vi) precluded Petitioner from introducing the
findings from his NYCPL § 730 examinations; and (vii) precluded Petitioner from introducing

The Appellate Division affirmed Petitioner's conviction on October 21, 2020. *People v. Laufer*, 133 N.Y.S.3d 592 (N.Y. App. Div. 2020). The Appellate Division held that Petitioner's motion to dismiss on speedy trial grounds was properly denied because the prosecution was not required to provide a new statement of readiness once Petitioner was found fit to stand trial. *Id.* at 594. The Appellate Division also held that the evidence was legally sufficient to establish Petitioner's homicidal intent, and that the verdict was not against the weight of the evidence. *Id.* at 594. The Appellate Division further held that the trial court did not err in any of its rulings at trial, including, relevant to the Petition, holding that the trial court was correct in precluding Dr. Izrayelit's testimony because Petitioner "failed to make a sufficient offer of proof that the proposed testimony was relevant, offered in good faith, and not cumulative of other testimony." *Id.* at 595.

On January 29, 2021, Petitioner sought leave to appeal to the New York Court of Appeals, raising three issues—the first two involving Petitioner's speedy trial claims, and the third involving the preclusion of Dr. Izrayelit's testimony. ECF No. 9-3 (Leave to Appeal). The Court of Appeals denied the application on March 5, 2021. *People v. Laufer*, 36 N.Y.3d 1098 (N.Y. 2021). Petitioner moved for reconsideration of the leave application denial, raising the same three claims, but also raising the claim that the trial evidence was legally insufficient, as well as "other examples" of how Petitioner's right to present a defense was abridged. ECF No.

_____

the Social Security Administration's finding that Petitioner was disabled due to mental illness. *Id*. at 105–32. Additionally, Petitioner argued that the trial court had erroneously: (i) admitted Petitioner's prior guilty plea in federal court—and subsequently erroneously prevented Petitioner's counsel from sufficiently explaining that guilty plea to the jury, and (ii) admitted evidence that Petitioner delayed raising an insanity defense. *Id.* at 132–45. Finally, Petitioner argued that the trial court erred in its instructions to the jury by: (i) not including the "deity exception" in its charge on the insanity defense; (ii) including an adverse instruction based on missing records; and (iii) choosing the prosecution's proposed hate crime instruction. *Id.* at 145–65.

9-4 (Petitioner's Motion to Reconsider).  The Court of Appeals summarily denied Petitioner's

application for reconsideration on May 27, 2021, without considering the merits of his additional

claims.  *People v. Laufer*, 37 N.Y.3d 958 (N.Y. 2021).

Petitioner now seeks a writ of habeas corpus.  In his Petition, Petitioner complains that

the trial court's preclusion of Dr. Izrayelit's testimony violated his constitutional rights to present

a defense and to a fair trial, and that these violations were not harmless error.  ECF Nos. 1, 12,

13.  Petitioner also, in passing, complains that the trial court "groundlessly removed the only

Jewish member of the jury"; (ii) precluded the defense from asking Mr. Ahmad select questions,

including how he learned how to headbutt; (iii) precluded the defense from introducing the

findings of doctors who had initially found Petitioner unfit to stand trial; (iv) "refused to give

defense counsel a . . . short recess" before cross examining a witness; and (v) "did not deviate

from its pattern insanity jury instruction" to include an exception "for those who think their

conduct has been sanctioned by a deity."  ECF No. 13 at 12–13.  In late June 2022, Petitioner

filed an amended petition adding a claim of actual innocence, ECF No. 12 (Amended Petition),[6]

with the consent of Respondent.  ECF No. 12-6.  On December 16, 2022, Petitioner filed a reply

in further support of his Amended Petition.  ECF No. 34.  On December 20, 2022, Petitioner

filed another reply claiming he had discovered a report from Dr. Izrayelit from August 7, 2012,

which Petitioner claims was turned over to the prosecution along with the other treatment notes

on January 6, 2016.  ECF No. 35.  Petitioner filed another motion to amend his Petition to add

---

[6]     Petitioner's first amended petition also included an affidavit from Dr. Izrayelit, *see* ECF
No. 10 at 29–31, which this Court will not consider as it was not a part of the record that the state
court considered.  *See Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) ("Review of factual
determinations under § 2254(d)(2) is expressly limited to the evidence presented in the State
court proceeding."); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (holding that habeas review
is limited to the state court record).

the discovery of this report.  ECF No. 37.  Respondent filed a letter opposing Petitioner's motion

to amend.  ECF No. 40.  The Court will first address the claims in Petitioner's Second Amended

Petition, ECF No. 12, and then address Petitioner's motion to further amend the Petition, ECF

No. 37.

## STANDARD OF REVIEW

I.   **Deferential Review Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act")**

Habeas petitions are governed by the standards laid out in the AEDPA, which commands

deference to the prior decisions of state courts.  The Act provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A district court may, therefore, only grant a writ of habeas corpus where, contrary to

clearly established federal law, "the state court reached a conclusion of law that directly

contradicts a holding of the Supreme Court," *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir.

2013),[7] or where "presented with facts that are materially indistinguishable from a relevant

Supreme Court precedent, the state court arrived at" a different conclusion.  *Id.*  Alternatively,

---

[7]      Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations, internal quotation marks, and footnotes.

the writ may be granted "if the state court identifies the correct governing legal principle . . . but *unreasonably applies* that principle to the facts." *Id.* at 133 (emphasis added).  Even where the state court appropriately applied federal law, a district court may act pursuant to § 2254(d)(2), but "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## DISCUSSION

### I.      The Preclusion of Dr. Izrayelit's Testimony

Petitioner's primary argument is that his right to present a defense and his right to a fair trial were violated when the trial court precluded Dr. Izrayelit from testifying at trial.  ECF No. 12 at 8.  Petitioner argues that habeas relief is warranted because the Appellate Division's determination that the trial court did not err when it excluded Dr. Izrayelit's testimony as cumulative, *see Laufer*, 133 N.Y.S.3d at 595, was contrary to, or an unreasonable application of, clearly established federal law.  ECF No. 12 at 30.

#### A.   Petitioner Did Not Establish That Dr. Izrayelit's Testimony Was Not Cumulative

A criminal defendant possesses a constitutional right to a "meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Part of that right to present a meaningful defense includes the right to call witnesses, including expert witnesses.  *See Taylor v. Illinois*, 484 U.S. 400, 408–09 (1988); *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001).  This right is not without limits, and may, in appropriate circumstances, bow to accommodate other legitimate interests.  *Hawkins v. Costello*, 460 F.3d 238, 243–44 (2d Cir. 2006).  A criminal defendant must comply with the established rules of procedure and evidence, as they are designed to assure fairness and reliability.  *Chambers v. Mississippi*, 410 U.S. 284,

294, 302 (1973).  The right, however, to present a defense is not an unfettered right to offer

testimony that is "incompetent, privileged, or otherwise inadmissible under standard rules of

evidence."  *Taylor*, 484 U.S. at 410; *see also Clark v. Arizona*, 548 U.S. 735, 769–71 (2006).

When it comes to the testimony of an expert witness, a criminal defendant's rights are "limited

by the requirements of relevancy and by the trial court's traditional discretion to prevent

prejudicial or confusing testimony."  *Agard v. Portuondo*, 117 F.3d 696, 704–05 (2d Cir. 1997),

*rev'd on other grounds*, 529 U.S. 61 (2000).

When evaluating whether a habeas petitioner's right to present a complete defense was

violated by a trial court's decision to preclude expert testimony, a district court first reviews the

trial court's ruling and then analyzes the materiality and relevancy of the precluded testimony.

*See Hawkins v. Costello*, 460 F.3d 238, 243–44 (2d Cir. 2006); *Howard v. Walker*, 406 F.3d 114,

132 (2d Cir. 2005).

### 1.  The Trial Court's Evidentiary Ruling

To determine whether a trial court's evidentiary ruling violated a petitioner's right to a

fair trial and to present a complete defense, a district court must first determine whether the trial

court's ruling was erroneous.  *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003).  If the ruling

was erroneous, then the district court looks at whether the omitted evidence, evaluated in the

context of the entire record, would have created reasonable doubt that did not otherwise exist.

*Hawkins*, 460 F.3d at 244.

Under New York law, it is well within the sound discretion of the trial court to determine

the admissibility and limits of expert testimony and whether such testimony should be excluded

as cumulative.  *People v. Lee*, 96 N.Y.2d 157, 162 (2001); *Rosabella v. Fanelli*, 639 N.Y.S.2d

573, 575 (N.Y. App. Div. 1996).  "Testimony is properly precluded as cumulative when it would

neither contradict nor add to that of other witnesses," even if relevant.  *Segota v. Tishman Const. Corp. of N.Y.*, 17 N.Y.S.3d 8, 10 (N.Y. App. Div. 2015).

Here, the trial court precluded the testimony of Dr. Izrayelit's because it would have been cumulative to the testimony of Dr. Bardey, who testified before the jury.  *See Laufer*, 133 N.Y.S.3d at 595.  The trial court determined, based on the testimony Dr. Izrayelit provided outside the presence of the jury and the defense's offer of proof, that Dr. Izrayelit's testimony would not have benefited the jury or aided in its decision-making process.  ECF No. 8-4 at 983. Dr. Bardey used Dr. Izrayelit's notes to evaluate Petitioner and had already testified regarding Dr. Izrayelit's treatment of Petitioner.  *Id*. at 981–82.  Therefore, the Court finds that the trial court's ruling was not erroneous, as the proffered testimony was cumulative and would not have aided the jury in its decision.

As the trial court's evidentiary ruling was not erroneous, the Court must next consider whether the evidentiary rules applied by the trial court—here, the ability of a trial judge to preclude expert testimony as cumulative—are "arbitrary or disproportionate to the purposes they were designed to serve."  *Hawkins*, 460 F.3d at 245.  A state evidentiary rule is considered "unconstitutionally arbitrary or disproportionate if it infringes upon a weighty interest of the accused."  *Scheffer*, 523 U.S. at 30; *see Redding v. N.Y. State Dep't of Corr.*, No. 17-cv-7075, 2020 WL 614835, at *15 (S.D.N.Y. Feb. 10, 2020).  When evaluating an allegation that an evidentiary rule violates a petitioner's right to present a defense, district courts look to see whether the state evidentiary rules appropriately allow for trial court discretion or whether they lead to the blanket exclusion of categories of evidence.  *Wade*, 333 F.3d at 60.

Here, "the ruling at issue is one of those ordinary evidentiary rulings by state trial courts concerning the admissibility of evidence, upon which the Court is traditionally reluctant to

impose constitutional constraints." *Redding*, 2020 WL 614835, at *16. When it comes to the

exclusion of expert testimony, "the Constitution leaves to the judges . . . wide latitude to exclude

evidence." *Id.* (holding that exclusion of expert testimony was not arbitrary and

disproportionate); *see also DeVaughn v. Graham*, No. 14-cv-2322, 2017 WL 244837, at *14

(E.D.N.Y. Jan. 19, 2017) (holding that ability of trial court to exclude third-party culpability

evidence was not arbitrary and disproportionate).

Because the trial court's ruling to preclude Dr. Izrayelit's testimony was not erroneous,

nor "contrary to, or an unreasonable application of, clearly established federal law," Petitioner's

claim that his right to present a defense was violated fails. 28 U.S.C. § 2254(d).

### 2. The Materiality of the Expert Testimony

In addition to assessing the trial court's evidentiary ruling, the Court also finds that Dr.

Izrayelit's testimony was not material. To establish a constitutional violation, "a defendant must

demonstrate that he was deprived of the opportunity to present a witness who would have

provided testimony that was both material and favorable to his defense." *Howard*, 406 F.3d at

132; *see also Santiago v. Keyser*, No. 19-cv-4020, 2022 WL 2917493, at *11 (S.D.N.Y. May 24,

2022). "Materiality requires that the omission . . . be evaluated in the context of the entire

record," including the trial court's reasons for excluding the evidence, and the strength of the

prosecution's case as a whole. *Howard*, 406 F.3d at 132; *see Washington*, 255 F.3d at 59;

*Agard*, 117 F.3d at 705–07. If a petitioner had the opportunity to present the same information

or argument that would have been presented in the excluded testimony, *Heidgen v. Graham*, 420

F. Supp. 3d 1, 13 (E.D.N.Y. 2019), or if the "admission of the testimony would not have created

an otherwise non-existent reasonable doubt about the petitioner's guilt," then it does not rise to

the level of a constitutional violation. *Washington*, 255 F.3d at 60; *see also Wright v. Poole*, No.

02-cv-8669, 2007 WL 7714966, at *6 (S.D.N.Y. Nov. 7, 2007) ("Where a trial court's purported errors center around excluded evidence, the reviewing federal court's duty on a petition for habeas corpus is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness.").

Petitioner contends that Dr. Izrayelit's testimony "was of critical importance to the defense because he was the only possible source of evidence about Mr. Laufer's increasingly paranoid fear of Muslims in the period leading up to the offense." ECF No. 13 at 28.  However, this contention is undermined by the record.  Even if the trial court had allowed Dr. Izrayelit to testify, Petitioner explicitly agreed *not* to ask questions regarding the period leading up to the offense, as that was the period for which Dr. Izrayelit's treatment notes were missing.  ECF No. 8-4 at 981–82.  Dr. Izrayelit, therefore, could only have testified about the period before February 2012.  Dr. Bardey, relying on Dr. Izrayelit's notes, had already provided testimony regarding Petitioner's mental state from that period.  *Id.* at 976, 981–98.  Because Petitioner already had an opportunity to offer expert testimony from Dr. Bardey as to Petitioner's mental condition from before February 2012—exactly what Dr. Izrayelit would have testified about— there was no violation of Petitioner's constitutional rights.  *See Heidgen*, 420 F. Supp. 3d at 13 (holding that there was no constitutional violation where trial court precluded testimony of a second expert witness because petitioner had already presented the same evidence through another expert witness).

Because Dr. Izrayelit's testimony was not material to Petitioner's defense, the Court finds the Appellate Division's holding was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

*B.   Harmless Error*

Petitioner further argues that the trial court's preclusion of Dr. Izrayelit's testimony was not harmless error.  Under the harmless error standard set forth in *Brecht v. Abrahamson*, a federal habeas court can overturn a state conviction only where there is a constitutional violation that had a substantial and injurious effect or influence on the jury's verdict.  507 U.S. 619, 637 (1993).  While this Court does not find the trial court's preclusion of Dr. Izrayelit to be a material error, even assuming it was, the Court finds that the preclusion did not have a substantial and injurious effect on the jury's verdict.

Petitioner's memorandum in support relies on *Gilmore v. Henderson*, 825 F.2d 663 (2d Cir. 1987).  Petitioner argues that like in *Gilmore*, Petitioner was unable to present evidence that went to the heart of his case.  ECF No. 13 at 30–33.  *Gilmore*, however, is easily distinguishable—here, unlike in *Gilmore*, Petitioner was able to present a witness, Dr. Bardey, to testify to everything to which Dr. Izrayelit would have testified at trial.  Therefore, the preclusion of Dr. Izrayelit's testimony did not have a substantial and injurious effect on the jury's verdict.  *Brecht*, 507 U.S. at 637.  Accordingly, the Court finds that even if there was a constitutional violation, it would have been harmless error.

## II.   Petitioner's Remaining Claims Are Unexhausted and Procedurally Barred

In addition to precluding Dr. Izrayelit's testimony, Petitioner argues that the trial court made additional errors throughout the trial that both individually and cumulatively impacted his right to a fair trial.  ECF No. 13 at 33.  Petitioner contends that the trial court erred when it:  (1) removed the only Jewish potential juror from the panel; (2) precluded Petitioner from questioning Mr. Ahmad about his immigration status, if he was an Afghani fighter, and if he approved of domestic terror activity perpetrated by other Mosque members; (3) precluded the

14

defense from introducing the findings of the two doctors who found Petitioner initially unfit to stand trial; (4) barred defense counsel from consulting with the defense expert prior to cross examining the prosecution's expert; and (5) instructed the jury to draw an adverse inference against Petitioner because the defense expert failed to turn over certain emails.  Petition at 8–12. While Petitioner raised these claims on direct appeal to the Appellate Division, ECF No. 9-2, he failed to raise them as part of his leave application to the Court of Appeals, ECF No. 9-3, leaving them unexhausted.  *Spence*, 219 F.3d at 170.  These additional claims are therefore procedurally barred since the time in which Plaintiff could properly exhaust has expired.

       A.     *Exhaustion*

A federal habeas court may only consider a claim that has been exhausted in state court. 28 U.S.C. § 2254(b)(1)(A).  A claim is exhausted when the petitioner fairly presents each of his constitutional claims to the highest state court and informs that court and the lower courts as to the legal and factual basis for the federal claims.  *Ramirez v. Att'y Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001).  A petitioner must present the same constitutional claim to the appropriate state court that he raises in his habeas petition, and the petitioner must have presented the claim to the highest state court which could have heard the claim.  *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999).

While Petitioner raised these claims on direct appeal to the Appellate Division, *see* ECF No. 9-2, they were never presented to the Court of Appeals.  On leave to appeal to the Court of Appeals, Petitioner only raised three claims—two claims alleging a violation of Petitioner's right to a speedy trial pursuant to NYCPL § 30.30, and a third claim regarding the trial court's preclusion of Dr. Izrayelit's testimony.  ECF No. 9-3 at 10 (Application for Leave to Appeal) ("Mr. Laufer's appeal squarely framed three legal issues, two of first impression involving

15

C.P.L. § 30.30. . . .   The third involved the preclusion of a critical defense witness. . . .").   The

Court of Appeals denied Petitioner's leave application.  *Laufer*, 36 N.Y.3d at 1098.  Petitioner

then filed a motion to reconsider that denial.  ECF No. 9-4 at 13–33 (Petitioner Motion to

Reconsider).  In his motion to reconsider, Petitioner raised several of the additional claims he

now raises in his Amended Petition.  *Id*.  The Court of Appeals denied Petitioner's motion to

reconsider.  *Laufer*, 37 N.Y.3d at 958.

  The law in the Circuit is clear that if a petitioner has not raised a claim as part of his leave

application, or requested specifically that the Court of Appeals consider all of the issues raised

on direct appeal, the claim is not fairly presented and is thus unexhausted.  *See Jordan v. Lefevre*,

206 F.3d 196, 198 (2d Cir. 2000) (finding that where petitioner raised only one claim as part of

his leave application and attached the briefs from his direct appeal containing two additional

claims, the two additional claims were not fairly presented to the Court of Appeals and barred

from federal habeas review); *Ramirez*, 280 F.3d at 97 (holding that Court of Appeals must be

clearly informed that petitioner is asserting issues raised on direct appeal in leave application).

   Here, because Petitioner did not raise these additional claims as part of his leave

application, the claims were not fairly presented to the highest state court and have therefore not

been properly exhausted.  Petitioner is unable to exhaust these claims because criminal

defendants in New York are only entitled to one direct appeal and one request for leave to

appeal.  22 N.Y.C.R.R. § 500.10(a).  If a claim is unexhausted and is procedurally barred in state

court, it is likewise procedurally barred from federal habeas review.  *See Aparicio v. Artuz*, 269

F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal

court may theoretically find that there is an absence of available State corrective process . . . if it

is clear that the unexhausted claim is procedurally barred by state law. . . .   In such a case the

habeas court theoretically has the power to deem the claim exhausted. . . .  This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted.");

*Wisdom v. Griffin*, No. 15-cv-6578, 2019 WL 13330781, at *4  (E.D.N.Y. July 31, 2019) ("Since [petitioner] has already used his one opportunity for leave to appeal to the New York Court of Appeals, this unexhausted claim would be procedurally barred in state court, and consequently, though not substantively litigated to exhaustion in state court, is . . . procedurally barred in federal court.").

While Petitioner now raises in his Petition several of the claims he raised in his motion to reconsider, these claims were not considered by the Court of Appeals on the merits,[8] and therefore remain unexhausted and procedurally barred.  A defendant is not permitted to present new arguments that were not presented in his direct appeal in support of a motion to reconsider. The procedural rules of the Court of Appeals explicitly provide that a criminal leave application must identify "the grounds upon which leave to appeal is sought," 22 N.Y.C.R.R. § 500.20(a)(4), and "a request for reargument or reconsideration shall not be based on the assertion for the first time of new points, except for extraordinary and compelling reasons."  22 N.Y.C.R.R. §

---

[8]     One of the reasons the Court of Appeals did not consider the additional claims Petitioner raised on the merits is because that request was procedurally improper:  In his motion to reconsider, Petitioner requested *sua sponte* review of his criminal appeal (including consideration of new arguments).  ECF No. 9-4 at 14.  This type of review is only available *after* leave to appeal has been granted, which was not the case here.  *See* 22 N.Y.C.R.R. § 500.11 ("The Clerk of Court shall notify all parties by letter when an appeal has been selected for review pursuant to this section.").

500.20(f)(1).  As a result, although Petitioner raised these additional claims in his direct appeal to

the Appellate Division, by failing to raise them in his leave application, Petitioner's claims are

unexhausted.  For the aforementioned reasons, Petitioner's claims are therefore procedurally

barred in federal court.  *See Wisdom*, 2019 WL 13330781, at *4.

      Accordingly, Petitioner's claims, other than his argument that the trial court violated his

right to present a defense when it precluded Dr. Izrayelit's testimony, which the Court has

already addressed, are procedurally barred.  *See Spence*, 219 F.3d at 170; *Coleman v. Thompson*,

501 U.S. 722, 735 n.1 (1991).

      *B.*    *Actual Innocence*

      To "escape the fate" of a procedural bar, a petitioner can demonstrate:  (i) cause for the

default; (ii) actual prejudice; and (iii) that failure to consider the claims will result in a

fundamental miscarriage of justice due to actual innocence.  *Aparicio*, 269 F.3d at 90; *Holmes v.*

*Lamanna*, No. 20-cv-2769, 2022 WL 1556497, at *6 (E.D.N.Y. May 17, 2022).  Petitioner has

not demonstrated cause, nor prejudice.  ECF No. 12 at 29–31; ECF No. 31 at 22–24 (noting that

Petitioner cites no new evidence to support his claim of actual innocence).  Petitioner does,

however, argue that he "is innocen[t] of the charges of which he stands convicted."  ECF No. 13

at 34.

      A showing of actual innocence may open a gateway to consideration of otherwise

procedurally barred claims.  *See McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).  When a

petitioner asserts actual innocence as an exception for considering procedurally defaulted claims,

he must establish that, considering new evidence, it is more likely than not that no reasonable

juror would have found the petitioner guilty beyond a reasonable doubt.  *Schlup v. Delo*, 513

U.S. 298, 327 (1995).  This is a very demanding standard:  the claim of actual innocence must be

both "credible and compelling"—meaning "supported by new reliable evidence" such as

"exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"

that was not presented at trial.  *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012).

   Petitioner does not meet this standard.  He does not raise any new evidence to support

his claim of actual innocence.  His only argument is that the evidence presented at trial was

insufficient to prove the requisite intent to kill.  ECF No. 12 at 28–30.  That is insufficient to

establish actual innocence.  *See Sostre v. Crowley*, No. 21-cv-207, 2022 WL 788836 (N.D.N.Y.

Feb. 15, 2022), *report and recommendation adopted*, 2022 WL 783302 (N.D.N.Y. Mar. 15,

2022) (holding that petitioner did not meet the stringent standard of actual innocence because he

did not present any new evidence but merely restated his claim that his conviction was

defective).  As Petitioner has not presented any new evidence to suggest he is innocent, he

cannot overcome the procedural bars to his claims.  Accordingly, Petitioner's remaining claims

are dismissed.

## <u>MOTION TO AMEND</u>

   Rule 15 permits a habeas petitioner to amend his pleading "with leave of court any time

during a proceeding."  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

   Petitioner requests leave to amend his claims based upon the "discovery" of a report from

Dr. Izrayelit from August 7, 2012, about treatment provided to Petitioner on August 2, 2012.

ECF No. 37-1 at 2 (Reply Declaration).  Petitioner states that this report was included in the

discovery provided to the prosecution on January 6, 2016, ten months before the trial took place.

ECF No. 37-1 at 4.  At trial, the prosecution moved to preclude Dr. Izrayelit's testimony because

he had no treatment notes for Petitioner from February of 2012 through December 2012.  ECF

No. 8-4 at 909–14.  The trial court questioned Dr. Izrayelit, outside the presence of the jury,

about the gap in the treatment records and he testified that he did not recall whether he had treated Petitioner during that period. *Id*. at 959–96. Petitioner alleges that the prosecution had Dr. Izrayelit's August 7, 2012, report, and thus misrepresented to the trial court that it lacked any treatment notes from Dr. Izrayelit from February 2012 through December 2012. ECF No. 37-1 at 5; ECF No. 8-4 at 909, 975. Petitioner contends that the prosecution's misrepresentations led to the preclusion of Dr. Izrayelit's testimony. ECF No. 37-1 at 2. Petitioner, however, fails to address the fact that he was the one who provided this discovery to the prosecution. He further fails to explain sufficiently why he did not alert the trial court to the existence of the records— except to say that he did not bring the relevant documents to trial because Petitioner's "entire case materials filled about three bankers boxes worth of materials" and that he "presumed that [the prosecution's] representations about what was and what was not in [these files] was well grounded." ECF No. 35 at 6.

Petitioner acknowledges that these amended claims were not raised in state court and thus are unexhausted. ECF No. 41 (Reply in Support of Motion to Amend) at 2–3, 3 n.2. Therefore, granting Petitioner's motion to amend *could* create a "mixed" petition for habeas corpus relief— one where Petitioner presents the court "with a single petition containing some claims that have been exhausted in the state courts and some that have not."[9] *Rhines v. Weber*, 544 U.S. 269, 271 (2005). Petitioner argues that the Court should grant a stay in order to allow Petitioner leave to exhaust his claims in state court, a tactic endorsed by the Supreme Court in *Rhines* as a way to deal with "mixed" habeas petitions under specific circumstances. ECF No. 41 at 2–3.

---

[9]     For the sake of argument, the Court chooses to analyze the new claims as if they are not exhausted but would be timely if brought in a collateral attack in state court, such that they are not procedurally barred.

*Rhines*, however, makes it clear that a district court should stay a petition and allow a habeas petitioner leave to exhaust his claims only if the petitioner has demonstrated:  (1) that he had "good cause for [his] failure to exhaust his claims first in state court"; (2) that his claims are "potentially meritorious"; and (3) that he has not engaged in "intentionally dilatory litigation tactics." *Rhines*, 544 U.S at 277–78.  Good cause "requires a showing of either (1) some factor external to the petitioner [that] gave rise to the default or (2) reasonable confusion, which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief." *Leslie v. Rich*, No. 21-cv-1036, 2022 WL 939525, at *2 (E.D.N.Y. Mar. 29, 2022).

Plaintiff fails to establish that there was good cause for his failure to exhaust his claims in state court.  Petitioner's counsel readily concedes that he has been in possession of Dr. Izrayelit's August 7, 2012, report since he began representing Petitioner.  ECF No. 37-1 at 6.  This means he was in possession of those documents during trial, at the time he made his direct appeal to the Appellate Division, when he requested leave to appeal to the Court of Appeals, and when he filed his first habeas petition before this Court.  "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S at 277.  Petitioner fails to demonstrate good cause here, and thus, even if the Court were to allow Petitioner to amend his Petition to add the new claims, it would not grant his request for a stay to exhaust his new claims in state court.

As Petitioner's new claims do not warrant a stay, and Petitioner concedes he has failed to exhaust his state remedies as to the additional claims, the Court finds those claims are futile.  Accordingly, the Court denies Petitioner's motion to amend his Petition. *Ortiz*, 2011 WL 1331509, at *14.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Petition with prejudice, and DENIES

Petitioner's motion to amend.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order

would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of

an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Court further

finds that Petitioner has failed to make a substantial showing of the denial of a constitutional

right. Therefore, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). Any

further request for a certificate of appealability must be addressed to the Court of Appeals. *See*

Fed. R. App. P. 22(b). The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
      June 12, 2023